UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-06-1-B-W |
| | ) | |
| JOSHUA L. EMERSON | ) | |

**SENTENCING ORDER**

Having pleaded guilty to possession of stolen firearms and the manufacture of a sawed-off shotgun, Defendant Joshua L. Emerson challenges the Probation Office's calculation of his offense level under the federal Sentencing Guidelines. This Court concludes he is subject to a base offense level of eighteen under § 2K2.1(a)(5), because his juvenile conviction is not countable under § 2K2.1(a)(3) or (4), a two-level "destructive device" enhancement under § 2K2.1(b)(3)(B) because a short-barreled shotgun is a destructive device, and a four-level enhancement under § 2K2.1(b)(5) because he used a firearm in connection with another felony offense by cutting the barrel of a shotgun he had earlier stolen.

**I. STATEMENT OF FACTS**

On January 6, 2006, Defendant Joshua L. Emerson pleaded guilty to two counts of possession of stolen firearms in violation of 18 U.S.C. § 922(j) and one count of manufacturing an illegal firearm in violation 26 U.S.C. §§ 5822 and 5861(f). In its Presentence Investigation Report (PSR), the Probation Office (Probation) identified a prior juvenile conviction for Mr. Emerson. On April 10, 2001, when he was 17, the Bangor Juvenile Court adjudicated Mr. Emerson as having committed a juvenile crime, which if charged as an adult would have been Robbery, Class A. *PSR* ¶ 25. The Juvenile

Court committed him to the Maine Youth Center until his 19th birthday. *Id.* Concluding that the juvenile conviction should count as a "felony conviction of . . . a crime of violence," Probation recommended a base offense level of twenty-two under U.S.S.G. § 2K2.1(a)(3). *PSR* ¶ 13.

Probation also recommended upward adjustments to Mr. Emerson's offense level including: (1) a two-level adjustment pursuant to U.S.S.G. § 2K2.1(b)(3)(B) because the illegal firearm (a sawed-off shotgun) constitutes a "destructive device" within the meaning of 26 U.S.C. § 5845(f)(2); and, (2) a four-level adjustment pursuant to U.S.S.G. § 2K2.1(b)(5) because Mr. Emerson "possessed [a] Sears and Roebuck 12-Gauge . . . as it was made into an illegal . . . firearm." *PSR* ¶¶ 15-16.

Mr. Emerson objects. He contends that § 2K2.1(a)(3) is inapplicable because his April 10, 2001 juvenile adjudication does not constitute a "felony conviction" of a crime of violence under the Guidelines, that a sawed-off shotgun is not a "destructive device" under § 2K2.1(b)(3)(B), and that § 2K2.1(b)(5) does not apply since he possessed the firearm in connection with the illegal alteration of that same firearm. *Def.'s Sent. Mem* at 1-8 (Docket # 24).

## II. DISCUSSION

### A. The Meaning of a "Felony Conviction"

#### 1. The Statutory Framework:   U.S.S.G. § 2K2.1(a)(3); U.S.S.G. § 2K2.1 Application Note 1; and, 15 M.R.S.A. § 3310(6)

Section 2K2.1(a)(3) provides a base offense level of twenty-two, "if . . . the defendant committed any part of the instant offense subsequent to sustaining one felony

conviction of either a crime of violence or a controlled substance offense . . . ."[1] The commentary to § 2K2.1 sheds light on the meaning of a "felony conviction":

> [A] prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. A conviction for an offense committed at age eighteen years or older is an adult conviction. A conviction for an offense committed prior to age eighteen years is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted (*e.g.*, a federal conviction for an offense committed prior to the defendant's eighteenth birthday if the defendant was expressly proceeded against as an adult).

U.S.S.G. § 2K2.1 application note 1.

Under Maine law, "[a]n adjudication of the commission of a juvenile crime shall not be deemed a conviction of a crime." 15 M.R.S.A. § 3310(6). Maine law establishes a process by which a court may treat as an adult a juvenile who commits a crime, which "would be murder or a Class A, B or C crime if committed by an adult." 15 M.R.S.A. § 3101(4). Under this provision, Mr. Emerson could have been treated as an adult, but there is no evidence he was. To the contrary, Mr. Emerson was found to have committed a juvenile crime in Maine Juvenile Court, and was committed to the Maine Youth Center. *See PSR* ¶ 25. As Mr. Emerson's April 10, 2001 adjudication was not "classified as an adult conviction" under Maine law, § 2K2.1(a)(3) should not apply.

### 2. *United States v. Unger*, 915 F.2d 759 (1st Cir. 1990)

*United States v. Unger*, 915 F.2d 759 (1st Cir. 1990), may direct a different result. In *Unger*, the First Circuit addressed whether prior juvenile convictions should count in

---

[1] Section 2K2.1(a)(3) also requires that "the offense involved a firearm described in 26 U.S.C. § 5845(a)"; Mr. Emerson concedes it did. *Def.'s Sent. Mem.* at 1 (Docket # 24).

3

calculating criminal history under U.S.S.G. § 4A1.2(d).[2]  *Unger* concluded that a prior juvenile conviction for receiving stolen property was countable:

> The assessment was premised on U.S.S.G. § 4A1.2(d)(2)(A), which instructs the reader to "add 2 points under § 4A1.1(b) for each adult *or juvenile* sentence of confinement of at least sixty days if the defendant was released from such confinement with [sic] five years of his commencement of the instant offense."  Because Unger's immurement at the Training School exceeded sixty days and occurred less than five years before the events underlying the crime charged in this case, section 4A1.2(d)(2)(A) applies on its face.  *See United States v. Williams*, 891 F.2d 212, 215-16 (9th Cir. 1989) (commitment to juvenile hall is "confinement" for purposes of § 4A1.2(d)(2)(A)), *cert. denied*, 494 U.S. 1037 (1990).

*Id.* at 761 n.3 (emphasis supplied); *see also United States v. Turner*, 438 F.3d 67 (1st Cir. 2006) (affirming district court's assessment of criminal history points for juvenile sentences).

Relying on U.S.S.G. § 4A1.2(c)(2), which directs that previous sentences for juvenile "status offenses" cannot be counted for purposes of a defendant's criminal history score, the defendant next contended that his juvenile convictions for waywardness should be characterized as "status offenses" within the meaning of the guideline.  *Id.* at 762.  In response, *Unger* wrote that "the guidelines themselves strongly suggest that a

---

[2] Section 4A1.2(d) provides:

> **(d) Offenses Committed Prior to Age Eighteen**
>
> > (1) If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add **3** points under § 4A1.1(a) for each such sentence.
> >
> > (2) In any other case,
> >
> > > (A) add **2** points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense;
> > >
> > > (B) add **1** point under § 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

4

state's taxonomy should not be given controlling effect." *Id.* at 763. It explained that if state law controlled, the "primary purpose of the Sentencing Reform Act, namely, to 'provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records,' 28 U.S.C. § 991(b)(1)(B) (1988), would be severely undermined." *Id.* at 762-63. Instead, the First Circuit looked to the substance of the underlying state offenses to determine whether they were "status offenses" within the meaning of § 4A1.2(c)(2). *Id.* at 763. Because the conduct underlying the three juvenile adjudications consisted of "(1) breaking and entering with intent to commit larceny, (2) receiving stolen goods, and (3) assault and battery," *Unger* determined that the wrongful acts were not "status offenses" and were countable. *Id.*

The narrow issue is whether the *Unger* analysis of § 4A1.2 applies to § 2K2.1(a)(3). This Court concludes it does not, because the language of § 2K2.1(a)(3) dictates a different result. Unlike § 4A1.2, § 2K2.1(a)(3) defines a "felony conviction" as "a prior *adult* federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year . . . ." U.S.S.G. § 2K2.1 application note 1 (emphasis supplied). Under § 2K2.1(a)(3), a conviction for an offense committed prior to age eighteen is "an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." *Id.* The example in the application note is where "the defendant was expressly proceeded against as an adult." *Id.* As opposed to § 4A1.2(d), § 2K2.1 incorporates the state classification of the juvenile offense into the determination as to whether to count the offense under § 2K2.1(a)(3).[3]

---

[3] The Armed Career Criminal Act (ACCA) requires that certain juvenile convictions count. 18 U.S.C. § 924(e). The Guidelines do not otherwise explain why juvenile offenses are treated differently between

5

As Mr. Emerson's juvenile adjudication was not classified as an adult conviction under Maine law and Maine did not proceed against him as an adult, *Unger* does not apply.[4]

## B.  The Applicable Base Offense Level

---

criminal history calculations under § 4A1.2 (and the ACCA, which under § 4B1.4 incorporates those calculations), and base offense level calculations under § 2K2.1, and this Court will not speculate why it is so. It simply concludes, based on the express language in the Guidelines, that it is so.

[4]     The Government points to four circuit court cases that count juvenile adjudications as "prior convictions" for purposes of the ACCA. *See United States v. Jones*, 415 F.3d 256 (2d Cir. 2005); *United States v. Burge*, 407 F.3d 1183 (11th Cir. 2005); *United States v. Jones*, 332 F.3d 688 (3d Cir. 2003); *United States v. Richardson*, 313 F.3d 121 (3d Cir. 2002). It implies that characterizing Mr. Emerson's juvenile adjudication as a "felony conviction" for purposes of his base offense level is no different than counting a juvenile adjudication as a predicate offense under the ACCA. This argument is incorrect. Congress explicitly "characterized juvenile adjudications as 'prior convictions' under the ACCA." *United States v. Smalley*, 294 F.3d 1030, 1031 (8th Cir. 2002); *United States v. Tighe*, 266 F.3d 1187, 1191 (9th Cir. 2001) ("Congress has declared that juvenile delinquency adjudications involving violent felonies may . . . qualify as predicate 'convictions' under ACCA."); 18 U.S.C. § 924(e)(2)(B), (C). There is no indication it has done the same with respect to a violation of 18 U.S.C. § 922(j) or 26 U.S.C. §§ 5822 and 5861(f), where the ACCA does not apply. *See* 18 U.S.C. § 924(e)(1) (ACCA only triggered by violation of 18 U.S.C. § 922(g)).

The other two cases cited by the Government are equally inapposite. *See United States v. Luna*, 125 Fed. Appx. 134 (9th Cir. 2005); *United States v. Lopez-Coronado*, 364 F.3d 622 (5th Cir. 2004). In *Luna*, the defendant pleaded guilty to firearms possession by a prohibited person in violation of 18 U.S.C. § 922(g)(1). 125 Fed. Appx. at 135. On appeal, the defendant argued that the district court erroneously counted a juvenile adjudication as a "felony conviction" in order to increase his base offense level under U.S.S.G. § 2K2.1(a)(4)(A). *Id.* The Ninth Circuit affirmed the district court's decision, concluding that the defendant's prior conviction was an adult conviction within the meaning of § 2K2.1 application note 1:

> Although Luna was a minor when he was previously convicted, he was sentenced as an adult to two years in state prison. The judge allowed him to serve that sentence in the custody of the California Youth Authority, noting on the Abstract of Judgment that Luna was "to be housed at C.Y.A. per Section 1731.5(c) W.I.C." *See* Cal. Welf. & Inst. Code § 1731.5(c) (providing that a court may order a person under 18 years old to be "transferred to the custody of the Youth Authority . . . solely for purposes of housing the inmate" who remains "committed to the Department of Corrections"). Because Luna was not "committed" to the Youth Authority, neither of the California statutory provisions relating to the special treatment of offenders subsequent to Youth Authority commitments applies.

*Id.* Thus, *Luna* does not represent a departure from § 2K2.1 and its commentary, because the defendant was convicted and sentenced as an adult.

Similarly, *Lopez-Coronado* fails to support the Government's position. In *Lopez-Coronado*, the defendant pleaded guilty to illegal re-entry in violation of 8 U.S.C. § 1326(a). 364 F.3d at 623. The district court increased his base offense level under the 2002 version of the Guidelines due to juvenile adjudications it deemed "felony convictions" within the meaning of U.S.S.G. § 2L1.2(b)(1)(D). *Id.* The Fifth Circuit affirmed the district court's determination that the juvenile adjudications were "felony convictions" only because "[t]he sentencing commission did not limit [the term] conviction [for purposes of § 2L1.2(b)(1)(D)] to an adult conviction as it has elsewhere." *Id.* (citing U.S.S.G. § 2K1.3 application note 2 (determining the base offense level for unlawful receipt, possession or transportation of explosive materials using only adult convictions), *and* U.S.S.G. § 2K2.1 application note 5 (determining the base offense level for unlawful receipt, possession or transportation of firearms or ammunition using only adult convictions)). The cases cited by the Government do not convince this Court that Mr. Emerson's juvenile conviction should be counted under § 2K2.1.

6

As § 2K2.1(a)(3) does not apply, the next question is whether Mr. Emerson's base offense level should be calculated under § 2K2.1(a)(4)(B):

(a) Base Offense Level (Apply the Greatest):

(4) **20**, if -- (B) the offense involved a firearm described in 26 U.S.C. § 5845(a) . . .; and the defendant (i) was a prohibited person at the time the defendant committed the instant offense; or (ii) is convicted under 18 U.S.C. § 922(d) . . . .[5]

The commentary to § 2K2.1 defines "prohibited person" as "any person described in 18 U.S.C. § 922(g) or § 922(n)." U.S.S.G. § 2K2.1 application note 3. The only potentially applicable statutory provision is § 922(g)(1), which prohibits anyone "who has been *convicted* in any court of . . . a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm. 18 U.S.C. § 922(g)(1) (emphasis supplied).

Mr. Emerson argues that Maine law determines whether a Maine juvenile adjudication constitutes a "conviction" as required by § 922(g)(1). This Court agrees. *See* 18 U.S.C. § 921(a)(20) ("What constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held."); *Caron v. United States*, 524 U.S. 308, 313 (1998); *United States v. Walters*, 359 F.3d 340, 343 (4th Cir. 2004); *United States v. Blodgett*, 130 F.3d 1, 2-3 (1st Cir. 1997). Accordingly, this Court must determine whether a juvenile adjudication is a § 922(g)(1) "conviction" under Maine law.

Under 15 M.R.S.A. § 3310(6), "[a]n adjudication of the commission of a juvenile crime *shall not be deemed a conviction of a crime*."[6] 15 M.R.S.A. § 3310(6) (emphasis

---

[5] Mr. Emerson concedes the offense involved a firearm described in § 5845(a). *See* n.1, *supra.* He has not been convicted of an offense under § 922(d).

[6] The term "juvenile crime" means, among other things, "[c]onduct that, if committed by an adult, would be defined as criminal by Title 17-A, the Maine Criminal Code, or by any other criminal statute outside that code, including any rule or regulation under a statute, except for those provisions of Titles 12 and 29-A not

7

supplied); *see also Maine v. Gleason*, 404 A.2d 573, 581 (Me. 1979) ("Under the Maine Juvenile Code, an adjudication of the commission of a juvenile crime is not deemed a conviction of a crime, and it does not lead to the civil disabilities which conviction of an adult crime may entail." (citing 15 M.R.S.A. § 3310(6))).  As a juvenile adjudication does not constitute conviction of a crime under Maine law, U.S.S.G. § 2K2.1(a)(4)(B) does not apply and Mr. Emerson's base offense level is eighteen pursuant to U.S.S.G. § 2K2.1(a)(5).[7]

### C. Destructive Device Enhancement

Mr. Emerson objects to the imposition of a two-level upward adjustment to his base offense level under U.S.S.G. § 2K2.1(b)(3)(B) for possession of a "destructive device."  He posits that a sawed-off shotgun is not a "destructive device" and argues: (1) the definition of "destructive device" as set forth in 26 U.S.C. § 5845(f)(2) is unconstitutionally vague; (2) application of the adjustment would amount to improper double counting; (3) the 2004 amendment of § 2K2.1 eliminated sawed-off shotguns

---

specifically included in paragraphs E and F . . . ."  15 M.R.S.A. § 3103(1)(A); *see also* 15 M.R.S.A. § 3003(16) ("'Juvenile crime' has the meaning set forth in section 3103.").

[7]  The Government cites four cases to support its argument that "[a] defendant's act of juvenile delinquency . . . [for] armed robbery . . . can make him a 'convicted' person within the meaning of 18 U.S.C. § 922(g)(1)."  *Resp. to Def.'s Sent. Mem.* at 3 (Docket # 25) (citing *Morris v. United States*, 118 Fed. Appx. 72 (7th Cir. 2004), *United States v. Bevard*, 44 Fed. Appx. 748 (8th Cir. 2002) (per curiam), *United States v. Crudup*, 225 F. Supp. 2d 688 (E.D. Va. 2002), *vacated and remanded*, *United States v. Walters*, 359 F.3d 340 (4th Cir. 2004), *and United States v. Mathis*, 735 F. Supp. 1057 (M.D. Ga. 1990)).  None of these cases, however, supports the Government's position.  *Morris* and *Bevard* addressed whether juvenile adjudications for violent crimes could qualify as predicate convictions under the ACCA.  The ACCA defines the term "conviction" to include "a finding that a person has committed an act of juvenile delinquency involving a violent felony."  18 U.S.C. § 924(e)(2)(C).  Section 922(g)(1), on the other hand, makes no mention of juvenile adjudications qualifying as predicate convictions; rather, it leaves that determination to state law.  *See* 18 U.S.C. § 921(a)(20).  *Mathis* is inapposite because the defendant was tried and sentenced as an adult, not a juvenile.  735 F. Supp. at 1058.

Its reliance on *Crudup* is perplexing.  In *Crudup*, the defendant was convicted of felony possession of a firearm.  His predicate conviction, however, was a juvenile adjudication in Virginia state court.  225 F. Supp. 2d at 689.  In 2004, the Fourth Circuit vacated the defendant's conviction and reversed the district court's denial of his motion to dismiss the indictment, finding that "a juvenile adjudication is not a conviction under Virginia law . . . [and] cannot serve as the underlying conviction for purposes of 18 U.S.C. § 922(g)(1)."  *Walters*, 359 F.3d at 341-42.  *Crudup* was vacated on the very ground for which the Government cites it.

8

from the definition of "destructive device"; and, (4) a sawed-off shotgun cannot be a "destructive device" because 26 U.S.C. § 5845(a) distinguishes between sawed-off shotguns and destructive devices by listing them separately. *Def.'s Sent. Mem.* at 4-7 (Docket # 24).

### 1. Void for Vagueness

Section 5845(f)(2) defines the term "destructive device":

[A]ny type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes . . . .

26 U.S.C. § 5845(f)(2). Mr. Emerson argues that this definition is unconstitutionally vague. He contends: "Because any shotgun, whether approved by the Secretary or not, may be 'readily converted' into [a] non-approved shotgun by simply sawing the barrel short, all shotguns are destructive devices. It is untenable to argue that Congress intended to outlaw all shotguns as destructive devices. Therefore, § 5845(f)(2) is unduly vague."[8] *Def.'s Sent. Mem.* at 5 (Docket # 24).

In general, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and

---

[8] Mr. Emerson's contention that all shotguns would be destructive devices, because they could be converted into unapproved firearms by sawing the barrels, makes no sense. Because a legal shotgun can be converted into an illegal one, does not make an unconverted shotgun a destructive device. Further, it is not necessarily true that all short-barreled shotguns would fall within § 5845(f)(2)'s definition of a "destructive device." The statute requires that "the barrel or barrels of the firearm must have a bore greater than one-half inch in diameter." 26 U.S.C. § 5845(f). *See People v. Cortez*, 442 N.Y.S.2d 873, 874 (N.Y. Sup. Ct. 1981) (noting that a .410 caliber shotgun has a bore diameter of less than one-half inch); *but see United States v. Lee*, 351 F.3d 350, 351 n.1 (8th Cir. 2003) (finding no error in the parties agreement and the district court's finding that the defendant's sawed-off .410 caliber shotgun meets the statutory definition of "destructive device" under § 5845(f)).

9

discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see also United States v. Campbell*, 61 F.3d 976, 980 n.4 (1st Cir. 1995); *Love v. Butler*, 952 F.2d 10, 14 (1st Cir. 1991). "The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Jordan v. DeGeorge*, 341 U.S. 223, 231-32 (1951). A statute need only provide fair warning, and it is not rendered unconstitutionally vague where "Congress might, without difficulty, have chosen 'clearer and more precise language' equally capable of achieving the end which it sought . . . ." *United States v. Powell*, 423 U.S. 87, 94 (1975) (quoting *United States v. Petrillo*, 332 U.S. 1, 7 (1947)).

Mr. Emerson has not cited, and this Court has not discovered, any case law discussing whether 26 U.S.C. § 5845(f)(2) is void for vagueness. However, the First Circuit addressed a similar argument regarding 26 U.S.C. § 5845(f)(1) – an explosive, bomb or similar device - in *United States v. Markley*, 567 F.2d 523 (1st Cir. 1977), and concluded it passed constitutional muster. Rejecting a vagueness argument, *Markley* concluded "that the defendants dealing in the devices here involved were well aware of their destructive propensities and that these devices had no legitimate social purpose. Section 5845(f)(1) provides adequate notice that the devices would be included within the term 'explosive, . . . (A) bomb, . . . or (F) similar device,' and a person of ordinary intelligence would be so aware in the circumstances of this case."[9] *Id.* at 528.

---

[9] Other circuits have reached similar conclusions. *See United States v. Fleischli*, 305 F.3d 643, 656 (7th Cir. 2002) (finding the term "similar device," as used in § 5845(f)(1)(F), to be sufficiently definite); *United States v. Price*, 877 F.2d 334, 337-38 (5th Cir. 1989) (finding that § 5845(f)(1) gives adequate notice that it includes a collection of components from which a grenade may be constructed); *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972) ("With reference to a Molotov cocktail, the part of the definition of 'destructive device' that refers to '(B) grenade . . . or (F) similar device' is not so vague as to be outside the constitutional requirement that a person of reasonable intelligence be forewarned what is prohibited."); *United States v. Morningstar*, 456 F.2d 278, 281 (4th Cir. 1972) ("On its face, the definition of a destructive device gives fair notice to a person of ordinary intelligence that it includes any combination of

10

This Court concludes that § 5845(f)(2) provides adequate warning to a person of ordinary intelligence that sawed-off twelve gauge shotguns fall within the definition of "destructive device." The definition explicitly encompasses all weapons "by whatever name known which will . . . expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter," except sporting shotguns excluded by the Secretary.[10] Moreover, like the defendants in *Markley*, Mr. Emerson knew or should have known that sawed-off shotguns "are inherently dangerous, lack usefulness except for violent and criminal purposes and their possession involves the substantial risk of improper physical force." *United States v. Fortes*, 141 F.3d 1, 8 n.3 (1st Cir. 1998) (quoting *United States v. Hayes*, 7 F.3d 144, 145 (9th Cir. 1993)). Section 5845(f)(2)'s definition of a "destructive device" as applied to short-barreled shotguns is not unconstitutionally vague.

### 2. Double Counting

Mr. Emerson contends that double counting would result "if the Court were to conclude that the sawed-off shotgun, which increases [his] Base Offense Level under [U.S.S.G. § 2K2.1(a)(5)], is also [a] destructive device subject to a 2 level enhancement

---

parts intended to be used as a bomb or weapon and from which a bomb or weapon can readily be assembled.").

[10] Every circuit court that has considered the issue has concluded sawed-off shotguns fall within the destructive device definition. *See United States v. Henry*, 417 F.3d 493, 494 (5th Cir. 2005) (per curiam), *cert. denied*, __U.S.__, 126 S. Ct. 673 (2005) ("[T]he sawed-off shotguns possessed by the defendants meet the guideline definition of 'destructive device' because each weapon can 'expel a projectile by the action of an explosive or other propellant, and . . . has [a] barrel with a bore of more than one-half inch in diameter.'" (citation omitted)); *United States v. Hardy*, 393 F.3d 747, 749 (8th Cir. 2004) (finding a ten-gauge sawed-off shotgun to fall within the definition of "destructive device"); *United States v. Wynn*, 365 F.3d 546, 551 (6th Cir. 2004), *vacated on other grounds and remanded for reconsideration in light of Booker*, 543 U.S. 1102 (2005) ("A sawed-off shotgun certainly is designed to expel a projectile (lead pellets) by means of an explosive or other propellant (gunpowder). The district court stated at the sentencing hearing that Wynn's shotgun had a bore of more than a half-inch diameter, thus making his weapon a destructive device under . . . the [definition] found in 26 U.S.C. § 5845(f)."); *United States v. Lee*, 351 F.3d 350, 351 n.1 (8th Cir. 2003) (summarily affirming the district court's conclusion that "an unregistered sawed-off . . . shotgun[] meets the statutory definition of 'destructive device'" as set forth in § 5845(f)(2)).

under U.S.S.G. § 2K2.1(b)(3)(B)." *Def.'s Sent. Mem.* at 5 (Docket # 24). This Court addressed the double counting argument in *United States v. McCarty*, No. CR-05-09-B-W, 2006 WL 760323 (D. Me. Mar. 22, 2006). For the reasons expressed in that opinion, this Court rejects Mr. Emerson's double counting argument.

### 3. 2004 Amendment of U.S.S.G. § 2K2.1

Mr. Emerson contends that the November 1, 2004 amendment of U.S.S.G. § 2K2.1 eliminated sawed-off shotguns from the definition of "destructive device." His argument is grounded on the fact that pre-2004 versions of the Guidelines defined "destructive device" to include a type of firearm listed in 26 U.S.C. § 5845(a), which explicitly includes short-barreled shotguns. *See* U.S.S.G. § 2K2.1 application note 4 (2003); 26 U.S.C. § 5845(a)(1), (2). By contrast, the 2004 and 2005 versions of the Guidelines do not define "destructive device" by reference to § 5845(a); rather, they define "destructive device" as having "the meaning given that term in 26 U.S.C. § 5845(f)." U.S.S.G. § 2K2.1 application note 1. The Commission adopted the statutory definition provided in § 5845(f) "in response to concerns that it [was] unclear whether certain types of firearms qualif[ied] as 'destructive devices'" under pre-2004 versions of the Guidelines. U.S.S.G. Supp. to Appx. C, Am. 669.

Although short-barreled shotguns are not explicitly included in the definition of "destructive device" in § 5845(f), they fall within the definition. *See Henry*, 417 F.3d at 494; *Hardy*, 393 F.3d at 748 ("[Section 5845(f)'s] definition of 'destructive device' includes most shotguns not found particularly suitable for sporting purposes."); *Wynn*, 365 F.3d at 551; *Lee*, 351 F.3d at 351 n.1. As *Wynn* demonstrates, the legislative history of the Gun Control Act makes clear that Congress intended to include sawed-off shotguns

12

within the § 5845(f)(2) definition of "destructive device." 365 F.3d at 551-52. The 2004 amendment to U.S.S.G. § 2K2.1 did not remove sawed-off shotguns from the scope of U.S.S.G. § 2K2.1(b)(3).

### 4. The Distinction Between Short-Barreled Shotguns and Destructive Devices in 26 U.S.C. § 5845(a)

Mr. Emerson asserts that a sawed-off shotgun cannot be a "destructive device" because 26 U.S.C. § 5845(a) distinguishes the two by listing them separately.[11] The same argument was rejected by the Eighth Circuit in *Hardy* and the Sixth Circuit in *Wynn*. This Court agrees with the Sixth and Eighth Circuits. Notwithstanding § 5845(a), § 5845(f) clearly encompasses most shotguns.[12] Moreover, the commentary to the current version of U.S.S.G. § 2K2.1 directs courts to § 5845(f), not (a), to determine whether the device is a "destructive device" within the meaning of § 2K2.1(b)(3); thus, any distinction made between a "destructive device" and a sawed-off shotgun in § 5845(a) is not dispositive. This Court concludes that a twelve gauge sawed-off shotgun is a destructive device within the meaning of § 2K2.1(b)(3).

### D. Possession of a Firearm in Connection with Another Felony Offense

Section 2K2.1(b)(5) provides for a four-level increase to a defendant's base offense level "[i]f [he] used or possessed any firearm . . . in connection with another felony offense . . . ." U.S.S.G. § 2K2.1(b)(5). This enhancement "was created in response to a concern about the increased risk of violence when firearms are used or

---

[11] Section 5845(a) provides in part: "The term 'firearm' means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; . . . and (8) a destructive device." 26 U.S.C. § 5845(a).

[12] Mr. Emerson has not presented any evidence that his sawed-off twelve gauge shotgun falls within an exception to the "destructive device" definition set forth in 26 U.S.C. § 5845(f)(2). There is no evidence, for example, that the Secretary has found that a sawed-off shotgun "is generally recognized as particularly suitable for sporting purposes[,] . . . is not likely to be used as a weapon, or is an antique . . . ." 26 U.S.C. § 5845(f).

13

possessed during the commission of *another* felony." *United States v. McDonald*, 165 F.3d 1032, 1037 (6th Cir. 1999), *abrogated on other grounds*, *United States v. Jackson-Randolph*, 282 F.3d 369 (6th Cir. 2002) (emphasis in original); *see also United States v. Armstead*, 114 F.3d 504, 513 (5th Cir. 1997) (section 2K2.1(b)(5) "reflects the concern for public safety which the Guidelines sought to achieve"). To determine whether § 2K2.1(b)(5) applies, this Court is required to undertake a two-step inquiry. It must consider whether the underlying offense constitutes "another felony offense" and, if so, whether the firearm was possessed "in connection with" the underlying offense. *United States v. Blount*, 337 F.3d 404, 406-07 (4th Cir. 2003).

### 1. "Another Felony Offense"

The commentary to § 2K2.1 defines "another felony offense" for purposes of § 2K2.1(b)(5) as "offenses other than explosives or firearms possession or trafficking offenses." U.S.S.G. § 2K2.1 application note 15. Because Probation calculated Mr. Emerson's offense level on the basis of his 18 U.S.C. § 922(j) violation, he contends that his manufacture of a sawed-off shotgun constitutes the predicate felony offense for purposes of § 2K2.1(b)(5). Thus, Mr. Emerson argues, the four-level enhancement does not apply because possession of stolen firearms is not "another felony offense" within the meaning of Note 15. The Government responds that possession of stolen firearms constitutes the predicate felony, and that Mr. Emerson committed "another felony offense" by later altering one of the stolen firearms. The chronology advanced by the Government is consistent with the Prosecution Version the Defendant has admitted.[13]

---

[13] Mr. Emerson pleaded guilty to two counts of possession of stolen firearms and one count of manufacturing an illegal firearm. During the Rule 11, Mr. Emerson admitted the facts contained in a written Government's Proposed Facts and Version of the Offense. *Gov.'s Proposed Facts and Version of the Offense* (Docket # 8). According to that document, Mr. Emerson came into possession of the Sears and

The question, therefore, is whether the act of manufacturing an illegal shotgun constitutes "another felony offense" beyond possession of the stolen firearms.

This Court has not unearthed any case law addressing whether § 2K2.1(b)(5) is applicable where, as here, the "other felony offense" is sawing off the barrel of the same shotgun the defendant had stolen. To manufacture an illegal firearm, a defendant necessarily must possess the firearm. At least two circuit courts have employed the *Blockburger* element-based analysis in the context of § 2K2.1(b)(5) to determine when a second crime constitutes "another felony offense." *See United States v. Lloyd*, 361 F.3d 197, 200-01 (3d Cir. 2004); *Blount*, 337 F.3d at 409 (noting that *Blockburger* is easier to apply than any "vague iterations of the 'closely related to' or 'inextricably intertwined with' test"). Under *Blockburger*, two crimes are considered separate offenses where "each [statute] requires proof of an additional fact the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (citing *Gavieres v. United States*, 220 U.S. 338, 342 (1911)). Other circuits have stressed the need for "a separation of time between the offense of conviction and the other felony offense, or a distinction of conduct between that occurring in the offense of conviction and the other felony offense." *United States v. Sanders*, 162 F.3d 396, 400 (6th Cir. 1998); *United States v. Szakacs*, 212 F.3d 344, 351 (7th Cir. 2000) ("All six published [Sixth Circuit] cases applying the phrase 'another felony offense' have involved crimes separated in time or by a 'distinction of conduct.'").

Even where two crimes require proof of different elements, are separated in time, or require different conduct, Note 15 may preclude application of § 2K2.1(b)(5). *See*

---

Roebuck twelve gauge shotgun on April 21, 2005, but did not alter it until April 26, 2005. *Id.* at 1-3; *see also PSR* ¶¶ 2, 5. The fact that Probation chose to calculate Mr. Emerson's offense level on the basis of his violation of 18 U.S.C. § 922(j), and not 26 U.S.C. §§ 5822 and 5861(f), has no effect on this Court's consideration of the timing of the crimes where, as here, Mr. Emerson was convicted of all three offenses and has admitted this chronology.

15

*Lloyd*, 361 F.3d at 201 ("[R]egardless of the interpretation given to the word 'another' in 2K2.1(b)(5), 'firearms possession or trafficking offenses' are categorically removed from the set of crimes that may constitute 'another felony offense.'"). In *United States v. Boumelhem*, 339 F.3d 414 (6th Cir. 2003), for example, the Sixth Circuit held that the offense level of a defendant convicted of felony firearms possession could not be enhanced under § 2K2.1(b)(5) on the basis of a conspiracy to violate 18 U.S.C. § 922(e). Section 922(e) prohibits delivery of a firearm or ammunition to a common carrier for shipment without written notice to the carrier. 18 U.S.C. § 922(e). The defendant argued that this amounted to a "firearms trafficking offense" within the meaning of former Note 18 (now Note 15). *Boumelhem*, 361 F.3d at 427. The Sixth Circuit agreed, even though 18 U.S.C. § 922(g) and (e) constitute different felonies under the *Blockburger* test. Similarly, in *United States v. English*, 329 F.3d 615 (8th Cir. 2003), a defendant's sentence for felony firearm possession had been enhanced because he had sold the guns associated with the possession offense. The Eighth Circuit noted that the sale of firearms was "trafficking" under former Note 18 (now Note 15), and could not be counted as "another felony offense." *Id.* at 617; *see also Lloyd*, 361 F.3d at 202 (where a defendant is convicted of possession of stolen firearms, acquired during the commission of a burglary, the burglary is a "firearms possession offense" and therefore not "another felony offense" within the meaning of U.S.S.G. § 2K2.1(b)(5)); *United States v. Fenton*, 309 F.3d 825, 827 (3d Cir. 2002) (same); *United States v. Szakacs*, 212 F.3d 344, 350 (7th Cir. 2000) (same); *United States v. Sanders*, 162 F.3d 396, 399 (6th Cir. 1998) (same); *but see United States v. Kenney*, 283 F.3d 934, 937-38 (8th Cir. 2002) ("[B]ecause [the defendant's] burglary offense is not specifically excluded from

consideration [under Note 15], it constitutes 'another felony offense' in addition to the firearms possession offense.").

Here, Mr. Emerson's manufacture of a sawed-off shotgun constitutes "another felony offense" for three reasons. First, "possession of stolen firearms" and "manufacture of an illegal firearm" are separate offenses under *Blockburger*, since each crime requires proof of at least one element the other does not. Second, the two crimes constitute separate offenses under the "distinction in time or conduct" test, since Mr. Emerson came into possession of the Sears and Roebuck twelve gauge shotgun on April 21, 2005, but did not modify it until April 26, 2005. Third, whatever the exact scope of a "firearms possession offense" in Note 15, it does not include the manufacture of a sawed-off shotgun, which requires affirmative action synonymous with "use" of the firearm as opposed to mere "possession." *See United States v. King*, 341 F.3d 503, 506 (6th Cir. 2003) (applying § 2K2.1(b)(5) enhancement where defendant "first *possessed* the gun (offense of conviction) and then *used* the gun (enhancement conduct)" (emphasis in original)). This Court concludes that the crime of manufacturing an illegal firearm constitutes "another felony offense" within the meaning of § 2K2.1(b)(5).[14]

### 2. "In Connection With"

---

[14] There are two other felony offenses justifying the application § 2K2.1(b)(5). In the First Circuit, a defendant need not have been convicted of or even charged with "another felony offense" for a court to consider a four-level adjustment under § 2K2.1(b)(5). *See United States v. Luciano*, 414 F.3d 174, 180-81 (1st Cir. 2005). The sentencing court need only find it is more likely than not that the defendant committed the offense. *Id.*; *see also United States v. Bell*, 411 F.3d 960, 965 (8th Cir. 2005). Here, Mr. Emerson admitted the facts in a written Government's Proposed Facts and Version of the Offense. *Gov.'s Proposed Facts and Version of the Offense* (Docket # 8). That document explains that Mr. Emerson obtained the firearms at issue by burglarizing two homes, and that the firearms were stolen to pay off a drug debt. *Id.* at 1-3; *see United States v. Kenney*, 283 F.3d 934, 937-38 (8th Cir. 2002) (finding that burglary constitutes "another felony offense" for purposes of § 2K2.1(b)(5), where the defendant came into possession of firearms during the course of the burglary). The burglaries and drug-related conduct count as other felony offenses, the commissions of which involved the use or possession of firearms, and provide a separate basis for the application of § 2K2.1(b)(5).

The First Circuit construes the phrase "in connection with" broadly, *United States v. Peterson*, 233 F.3d 101, 111 (1st Cir. 2000) (citing *United States v. Thompson*, 32 F.3d 1, 7 (1st Cir. 1994)), and requires only "causal or logical sequence between possession and the related offense." *United States v. Ellis*, 168 F.3d 558, 563 (1st Cir. 1999); *see also United States v. Olivera*, 145 Fed. Appx. 686, 687 (1st Cir. 2005) (per curiam). While mere coincidental possession does not establish the requisite connection, it is sufficient "if the possession has 'the potential to aid or facilitate' the other crime." *Ellis*, 168 F.3d at 563 (quoting *Thompson*, 32 F.3d at 6). Here, Mr. Emerson's possession of the stolen firearms facilitated the manufacture of the sawed-off shotgun. Indeed, absent the firearms, he could not have committed a violation of 26 U.S.C. §§ 5822 and 5861(f). Accordingly, this Court concludes that Mr. Emerson is subject to a four-level enhancement under § 2K2.1(b)(5).

## III. CONCLUSION

This Court concludes:

1. Mr. Emerson's base offense level is eighteen pursuant to U.S.S.G. § 2K2.1(a)(5);

2. Mr. Emerson is subject to a two-level enhancement under U.S.S.G. § 2K2.1(b)(3)(B) as his offense involved a "destructive device" within the meaning of 26 U.S.C. § 5845(f); and,

3. Mr. Emerson is subject to a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) because he possessed a firearm in connection with another felony offense.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 11th day of May, 2006